W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

Raymond W. JONES et al. and V. A.
Sauls, Inc., et al., Appellees.

No. 21059.

United States Court of Appeals
Fifth Circuit.

Jan. 25, 1965.

Bessie Margolin, Assoc. Solicitor, U. S.
Dept. of Labor, Washington, D. C.,
Charles Donahue, Solicitor of Labor,
Robert E. Nagle, Beate Bloch, Attys., U.
S. Dept. of Labor, Washington, D. C.,
Beverley R. Worrell, Regional Atty., for
appellant.

deQuincy V. Sutton, Meridian, for appellees Jones.

David C. Welch, Laurel, Miss., Welch, Gibbes & Graves, Laurel, Miss., of counsel, for appellees Sauls, and others.

Before TUTTLE, Chief Judge, and JONES and ANDERSON,* Circuit Judges.

ANDERSON, Circuit Judge.

These two consolidated actions were brought by the Secretary of Labor under § 17 of the Fair Labor Standards Act, 52 Stat. 1069 (1938), as amended 75 Stat. 74 (1961), 29 U.S.C. § 217 (1961), to enjoin future violations of the minimum wage and bookkeeping provisions. Sections 16 and 17 [1] are the two sections of the Act which concern the civil liability of employers for non-compliance with wage standards. In the action against Jones, et al. the Secretary sought to have enjoined future violations of the shipping provision as well, and asked for an injunction to compel Raymond and Roscoe Jones to pay to certain employees minimum wages and overtime compensation due them, but withheld, in the aggregate amount of $6,609.16. The defendants in each of the cases denied the allegations of the complaint and demanded a jury trial. The Secretary's motions to strike these demands were denied by the trial court, and this interlocutory appeal is taken from that denial.

The suit against the Sauls Corporations and Sauls, individually, concerns only future violations and seeks an injunction to prevent them. The claim of the defendants that they have a right to a jury trial is based simply on the assertion that there are disputed issues of fact. But even though the facts are disputed, the question of the issuance of a restraining injunction pursuant to § 17 of the Fair Labor Standards Act is an equitable matter coming within the general equity jurisdiction and powers of the court and, as such, does not carry with it the right in any party to the proceeding to demand a jury trial where neither the statute under which the action is brought or any other statute provides the right to have the facts found by a jury. United States v. State of Louisiana, 339 U.S. 699, 706, 70 S.Ct. 914, 94 L.Ed. 1216 (1950); Fleming v. Peavy-Wilson Lumber Co., 38 F.Supp. 1001 (W.D.La.1941).

The action against Raymond and Roscoe Jones is somewhat less simple, because it concerns, not only the injunctive restraint of future violations, but also the restraint of the continued withholding of minimum wages and overtime compensation due to certain employees. The defendants base their claims to a right to a jury trial on several asser-

* Of the Second Circuit, sitting by designation.

1. The pertinent portions of § 16 and § 17 read as follows: Section 16(b): "Any employer who violates the provisions of section 6 or section 7 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. * * * The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 17 of this title in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 6 or section 7 of this title by an employer liable therefor under the provisions of this subsection."

Section 17: "The district courts * * * shall have jurisdiction, for cause shown, to restrain violations of section 15 of this title, including in the case of violations of section 15(a) (2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter * * *."

tions: that there is here a disputed issue of fact, i. e. whether or not allegedly earned but unpaid wages are due to certain employees by the employer; that this is no more than a private claim between private adversaries; that no public right is involved; and that the claim is not for restitution of wages, not paid because of wrongful discharge, but is simply one for remuneration for work done. They further argue that because of these considerations the Seventh Amendment to the Constitution of the United States forbids denial of a jury in the trial of the factual issues in an action such as this which, they say, was cognizable to the common law in 1789.

■ The fallacy implicit in all of the appellees' claims is the assertion or assumption that no public right is involved. The history and purpose of the Fair Labor Standards Act and of § 17, both in its wording and in its relationship to the other sections of the Act, make it abundantly clear that § 17 was designed and enacted as a necessary measure to assure the effective and uniform compliance with and adherence to a public policy, relating to wage standards for labor, adopted in the National interest.[2]

As originally enacted in 1938, § 17 provided: "The district courts * * * shall have jurisdiction, for cause shown, to restrain violations of § 15." This was construed as a grant of equitable jurisdiction, carrying with it the traditional power of an equity court to afford full relief, including restitution or reparation where appropriate, without violating any right to jury trial. McComb v. Frank Scerbo & Sons, 177 F.2d 137 at 138–139 (2d Cir. 1949).

As a result of the Scerbo decision, in 1949 Congress was persuaded to take away the equity power of the courts to order payment of past due minimum wages or overtime compensation and it amended § 17 by adding to it the following:

"Provided, That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action."

By 1961, however, it became apparent that the enforcement provisions of the Act were not operating satisfactorily to protect the public interest. With the taking of necessary action left to the initiative of the employees themselves, enforcement was obviously exposed to employer and other pressures. The implications are plain from that part of the Senate Committee report which said: "Very few of these suits have been brought by employees under section 16 (b) of the act and of the few that have been brought most are initiated by individuals no longer in the employ of the defendant employer." U.S.Code Cong. & Ad.News, 87th Congress, First Session 1961, Vol. 2 at p. 1658.

The 1949 amendment was repealed and in its place the following clause was enacted to revive the jurisdiction of the district courts to restrain violations of § 15: "including in the case of violations of section 15(a) (2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter * * *."

■ In this fashion Congress expressly restored the full equity powers of the courts in exercising the jurisdiction granted in § 17. There is nothing in the wording of § 17, as amended in 1961, or in the legislative history of § 17, or any of its amendments, to suggest that Congress intended to provide for the trial

2. Two well reasoned district court opinions which give thorough analyses and discussions of the history of § 17 are those of Chief Judge Bootle in Wirtz v. Alapaha Yellow Pine Products, Inc., 217 F.Supp. 465 (M.D.Ga. May 1963) and Judge Henley in Wirtz v. Robert E. Bob Adair, Inc., 224 F.Supp. 750 (W.D.Ark. Dec. 1963).

of factual issues arising under it by a jury. Had it so intended it could easily have said so. Actually the language used strongly implies a contrary intent. The 1961 amendment is couched in traditional equitable terms of "restraining" a continuing wrong. The district courts are given "jurisdiction * * * to restrain violations * * * including * * * the restraint of any withholding * *." The equitable action authorized in relation to withholding is simply emphasized as a part of the jurisdiction to restrain violations generally. Absent any statutory provision for jury trial, as is clearly the case here, the defendants have no right to demand it.

 The appellees argue that a right to jury trial may be inferred from a comparison of § 17 and § 16(b). Under § 16 (b) the employees may sue the employer for back pay, and under § 16(c) the Secretary, upon the written request of the employees, may bring the action. Such cases are analogous to actions at law, e. g. debt or assumpsit, and, on proper demand, are triable before a jury. Lewis v. Times Publishing Co., 185 F.2d 457 (5th Cir. 1950); Olearchick v. American Steel Foundries, 73 F.Supp. 273 (W.D. Pa.1947); 5 Moore, Federal Practice ¶38.27, at 208 (2 ed. 1951). In 1961 Congress amended § 16(b) to provide that the right of employees to sue their employer "shall terminate upon the filing of a complaint by the Secretary of Labor in an action under § 17 * * * in which restraint is sought of any further delay in the payment of unpaid overtime compensation * * * owing to such employee * * *."

Appellees conclude from the interrelationship of these two sections that Congress intended to carry over the jury trial from the terminated § 16(b) proceeding to the § 17 proceeding where the Secretary seeks a restitutionary remedy. This argument was advanced in Wirtz v. Robert E. Bob Adair, Inc., 224 F.Supp. 750, 755 (W.D.Ark.1963) but was properly rejected for a well expressed reason:

"When Congress passed the 1961 Act, it presumably knew that under existing law the right of trial by jury was recognized in section 16 cases and was not recognized in section 17 cases; it also knew the effect which a suit by the Secretary under amended section 17 would have on section 16 rights. Had Congress intended that all or some of the factual issues in a section 17 case should be tried to a jury if the Secretary sought a back pay order as part of the desired injunctive relief, Congress could easily have said so."

The appellees protest that the failure by Congress to provide for jury trial contravenes their rights under the Seventh Amendment to the Federal Constitution. They identify the present case with decisions by the Supreme Court and by this court where there is a blending of legal and equitable issues and demands for relief and in which the courts have held that neither the association of the legal issues with those which are equitable nor the seeking of equitable relief can deprive a party of his rights to a jury trial on the legal issues. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L. Ed.2d 44 (1962); Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F. 2d 486 (5th Cir. 1961).

 In the instant case, however, the purpose of the injunction to restrain the withholding of wages due is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest. It is true that as a result, money may pass from the employer into the pocket of the employee or, if he is not available, then into the coffers of the United States Treasury, but that enforced payment, which must be made even if the employee or his representatives or heirs no longer exist to claim it, is simply a part of a reasonable and effective means which Congress, after trial and error, found it necessary to adopt to bring about general compliance with § 15(a) (2). In the course of his remarks in presenting the bill for the 1961 amendment to the Act,

President Kennedy, then Senator, said, with reference to the enforcement provision, " \* \* \* it will serve as a source of protection to employers who pay a decent wage and who must compete with employers who pay a substandard wage." U.S.Code Cong. & Ad.News, 87th Congress, First Session 1961, Vol. 2 at p. 1621. The effectiveness of this protection is a matter of cardinal importance to the vitality of the Fair Labor Standards Act and the fulfillment of its purposes. The Seventh Amendment does not require Congress to blunt the most competent means of insuring general compliance with a key section of the Act by depriving the equity courts of a significant part of their inherent power. The difference between restraining the withholding of past due wages and punishing for contempt for violation of an injunctive order restraining future withholding of wages is not significant in the framework of this legislation. The order to pay withheld, but earned, remuneration is to redress a wrong being done to the public good.

As the Supreme Court said in an analogous statutory context:

"When the Administrator seeks restitution under § 205(a) he does not request the court to award statutory damages to the purchaser or tenant or to pay to such person part of the penalties which go to the United States Treasury in a suit by the Administrator under § 205(e). Rather he asks the court to act in the public interest by restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant. Such action is within the recognized power and within the highest tradition of a court of equity. Thus it is plainly unaffected by the provisions of § 205 (e)." Porter v. Warner Holding Co., 328 U.S. 395 at 402, 66 S.Ct. 1086 at 1091, 90 L.Ed. 1332 (1946). See also Mitchell v. DeMario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L. Ed.2d 323 (1960). It is hardly necessary to state that certainly no such action was known to the common law.

In the light of the 1961 Amendment to § 17 we are satisfied that the appellees' effort to draw a distinction between "restitution" of wages lost and "remuneration" for labor performed is, for the purpose of this case, without merit. We conclude that Congress in enacting the amendment to § 17 in 1961 gave the courts full equity powers to restrain violations of § 15(a) (2). It made no provision for the jury trial of any factual issues connected therewith and its failure to do so did not violate the Seventh Amendment to the Constitution of the United States.

The cases are reversed and remanded with instructions to grant the Secretary's motions to strike the defendants' demands for jury trial.